

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ARNULFO FRANCO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:04-CV-0278 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**TO REVERSE THE DECISION OF THE COMMISSIONER**

Plaintiff ARNULFO FRANCO brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's application for a term of disability, disability insurance benefits (DIB), and supplemental security benefits (SSI). Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED, and the case REMANDED for further administrative proceedings.

I.
THE RECORD

Plaintiff filed applications for DIB and SSI benefits on April 18, 2001, alleging he became disabled on January 1, 2001. (Tr. 42-44; 160-62). Plaintiff alleged he was unable to work due to impairments of diabetes, hepatitis C, and a hernia, and the fatigue, weakness, and pain resulting

therefrom. (Tr. 48-49; 58). At the time he filed his applications, plaintiff was 46-years-old, 5' 11" tall, and weighed 324 pounds. Plaintiff identified past relevant work as a truck driver, working ten (10) hours per day, five days a week, and noted the highest grade of school he had completed was the 5th grade. (Tr. 50, 55).

The Social Security Administration denied benefits initially and upon reconsideration. (Tr. 23-31; 34-37; 163-174). An administrative hearing was held before an Administrative Law Judge (ALJ) on June 19, 2002. (Tr. 175-91). Plaintiff was represented at the hearing by a representative who argued plaintiff's uncontrolled insulin-dependent diabetes mellitus met or equaled a listed impairment under section 9.08 of the Listing of Impairments. (Tr. 69). In the alternative, plaintiff's representative argued plaintiff had the residual functional capacity (RFC) for less than a full range of sedentary work and was thus disabled under Rule 201.00(h) of the Grids. Plaintiff's representative also asserted plaintiff was disabled due to his multiple impairments of diabetes and obesity and his exertional and non-exertional impairment-related symptom of weakness.

On July 22, 2002, the ALJ rendered an unfavorable decision, concluding plaintiff was not disabled at any time after his alleged onset date and through the date of his decision. (Tr. 15). The ALJ initially noted plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 12). The ALJ determined plaintiff's impairments of diabetes mellitus and hepatitis C were severe impairments, but that plaintiff did not have any disorder or combination of disorders meeting or equaling any of those described in the Listing of Impairments. The ALJ noted he specifically reviewed Sections 5.00 (digestive system) and 9.00 (endocrine system) *et seq.* of the listing-level impairments. (Tr. 13). The ALJ acknowledged plaintiff has "symptom-producing medical problems," and noted plaintiff's complaints of symptoms of chronic pain from his hernia,

and physical weakness, fatigue, affected vision, and dizziness due to his diabetic condition. The ALJ found, however, that plaintiff's testimony and other evidence did not credibly establish functional limitations to the extent plaintiff alleged. After reviewing plaintiff's medical records, the ALJ noted plaintiff's hepatitis C had been stable, and that his diabetes mellitus, although "somewhat poorly controlled," had not produced any of the complications normally associated with the disease. Specifically, the ALJ found the medical evidence showed an occasional complaint of blurred vision and occasional headaches, but did not establish eye, foot, or urinary problems, shortness of breath, gastrointestinal issues, musculoskeletal malfunctioning, internal or end-organ damage, or any significant functional limitations. (Tr. 13, 14). The ALJ noted plaintiff was repeatedly advised to make lifestyle changes, such as more exercise, weight loss, and smoking cessation, but yet plaintiff's blood sugars remained high, partially because of an improper diet and poor compliance with monitoring of his blood sugar levels.

The ALJ specifically referenced progress notes from plaintiff's primary medical provider, Ms. Sylvia Perez, a certified nurse practitioner, reflecting plaintiff's treatment for his diabetes. The ALJ also noted a progress report from Dr. Verma, a physician who examined plaintiff on July 23, 2001, August 24, 2001, September 25, 2001, January 29, 2002, and March 12, 2002. In his September 25, 2001 progress report, the doctor indicated he had completed a disability form for plaintiff for Medicaid benefits. Under this notation in his progress note, Dr. Verma wrote, "[Patient] has no signif[icant] disabling condition except obesity but [undecipherable]." (Tr. 14). The ALJ noted Dr. Verma's findings that plaintiff's hepatitis C and liver function tests were stable, and later in his decision the ALJ noted that "[b]ody habitus is not a material or decisive factor to a disability finding under the Social Security Act." (Tr. 15).

The ALJ discussed the September 25, 2001 assessment form Dr. Verma completed for plaintiff's Medicaid benefits. On the first page of this assessment, Dr. Verma found plaintiff could lift "20 lbs and up," was able to sit 8 hours in an 8-hour workday, was able to stand and walk 5 hours in an 8-hour workday, and could perform each of these functions "consistently for prolonged periods without having to take an unreasonable number and length of rest periods." (Tr. 14). The ALJ noted Dr. Verma also found plaintiff could frequently (2.6 hours and greater per 8-hour day) climb, balance, stoop, crouch, kneel, bend, crawl, push/pull, reach, handle and feel, and though plaintiff was unable to work at his last occupation as a truck driver, he was "able to work at other full time jobs." (Tr. 14; 105). The ALJ further noted that despite the above findings, Dr. Verma, on the second page of the assessment, indicated plaintiff would have a medical need to lie down 5 times daily for 1 hour each time, elevate his legs 10 times daily, for ½ hour each time, and rest frequently 8 times daily, for 15 minutes each time, due to low back pain, right hip pain, and an umbilical hernia.[1] (Tr. 14; 106). The ALJ noted these statements on the second page of the assessment were inconsistent with Dr. Verma's statements on the first page of the assessment, particularly the finding that plaintiff was able to perform the lifting, sitting, standing, and walking requirements of light work for prolonged periods without having to take an unreasonable number and length of rest periods. The ALJ also noted the second page of the assessment was inconsistent with Dr. Verma's statements in plaintiff's progress report dated the same date that plaintiff had no significant disabling condition except his obesity. The ALJ concluded, "In light of these alternative statements, and Dr. Verma's overall medical observations in regard to the claimant's condition, it seems clear that he did not intend to suggest that the claimant's need for rest periods and leg

---

[1] The ALJ also noted Dr. Verma's summary of plaintiff's conditions were insulin-dependent diabetes, umbilical hernia, hepatitis C, arthritis and obesity.

elevation would preclude his completion of a normal eight-hour workday."

In his decision, the ALJ noted he also considered the professional medical opinions of the SSA program physicians who had reviewed the evidence of record and concluded plaintiff's impairments were not severe enough to be considered disabling and did not limit his ability to perform basic and routine work activities. The ALJ stated that while he did not concur with the SSA physicians that plaintiff's impairments were non-severe, he did find that plaintiff retained the residual functional capacity (RFC) to perform a wide range of light work activities.

The ALJ noted plaintiff was considered a younger individual during the times at issue, had a marginal 5th-grade education, and worked in the past as a truck driver for various employers. The ALJ found that, again based on the functional assessment of Dr. Verma, it was unlikely plaintiff would be able to return to one of his previous jobs. The ALJ cited Rule 202.18 of the Medical-Vocational Guidelines of Appendix 2, Subpart P, Social Security Regulations No. 4 as applicable to plaintiff's vocational profile, to wit: a younger individual, with a limited education or less, no transferable work skills, and an RFC for light work. The ALJ found that in accordance with Rule 202.18, which directed a conclusion of not disabled, plaintiff was not disabled at any time after his alleged onset and through the date of the decision.

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings, and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses

and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

## III.
## ISSUES

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the regional and national economies, and whether the proper legal standards were applied in making this determination. To this extent, plaintiff presents the following issues:

1. The RFC determination is not consistent with applicable legal standards and not supported by substantial evidence "because the ALJ failed to discuss the

        impact of plaintiff's obesity on his ability to do work-related activities"; and

2.      The RFC determination is not consistent with applicable legal standards and not supported by substantial evidence "because the ALJ failed to recontact [plaintiff's] treating physician for clarification of a seemingly internally inconsistent assessment of plaintiff's physical limitations."

## IV.
## MERITS

### A.
### Discussion of Impact of Obesity

In progress notes detailing his third examination (on September 25, 2001) of plaintiff, Dr. Verma noted plaintiff's "[d]isability form for medicaid [was] completed" and that plaintiff had "no signif[icant] disabling condition *except obesity* but [undecipherable]." (Tr. 117) (emphasis added). The ALJ noted Dr. Verma's statement concerning plaintiff's obesity in his decision numerous times, but did not find plaintiff's obesity to be a severe impairment, instead noting "[b]ody habitus is not a material or decisive factor to a disability finding under the Social Security Act." (Tr. 15). No further explanation or elaboration of this comment was made.

SSR 02-1p provides guidance concerning the evaluation of obesity in disability claims. Plaintiff, in his first ground, argues the ALJ did not adequately discuss plaintiff's obesity at Steps 3 and 4 of the sequential evaluation as detailed under SSR 02-1p. Specifically, plaintiff argues the ALJ did not discuss, at Step 3: (1) whether his obesity increased the severity of another of his impairments to the extent that the other impairment meets the requirements of a listing; (2) whether plaintiff's obesity, by itself or in combination with another impairment, was medically equivalent to a listed impairment; or at Step 4, discuss (3) the impact of plaintiff's obesity on his ability to perform routine movements and other physical activities within the work environment on a

sustained basis. Plaintiff maintains it was not sufficient for the ALJ to simply find his obesity was not severe and find that it did not meet or equal in severity a listed impairment. Instead, plaintiff contends the ALJ was required to discuss and consider the equivalency of plaintiff's obesity at Step 3, as well as the impact of plaintiff's obesity on his RFC at Step 4. Plaintiff contends this case should be remanded for development and further evaluation per SSR 02-1p.

The administrative record reflects the ALJ was aware of and considered plaintiff's obesity when determining the severity of plaintiff's impairments, plaintiff's RFC and, ultimately, whether plaintiff was disabled. The ALJ noted plaintiff's obesity with references to plaintiff's medical records, including Dr. Verma's September 25, 2001 progress report. The issue is whether the ALJ's evaluation of plaintiff's obesity was sufficient and, if not sufficient, whether plaintiff was harmed by the ALJ's failure to more thoroughly discuss the issue of plaintiff's obesity and its impact on plaintiff's RFC.

The ALJ did not specifically discuss whether plaintiff's obesity increased the severity of his other impairments to the degree they would meet the requirements of a listing. Plaintiff, however, fails to identify which "other impairment," *i.e.*, plaintiff's diabetes mellitus or hepatitis C, he contends was increased in severity by plaintiff's obesity <u>to the level of a listed impairment</u> or in what manner it is so increased. Further, plaintiff does not specifically argue that his obesity, by itself or in combination with his other impairments, is medically equivalent to a listed impairment. Consequently, any error by the ALJ in failing to discuss obesity, as it relates to a listing, was harmless. The ALJ, however, also did not specifically discuss the impact of plaintiff's obesity on his ability to perform routine movements and other physical activities within the work environment

on a sustained basis pursuant to each of the steps set forth in SSR 02-01p.

This case is dependent upon whether the ALJ decision is unambiguous or whether such decision contains contradictory findings. If, in fact, the ALJ opinion can be fairly read as holding that plaintiff's obesity is not even an issue because such is not cognizable for purposes of Social Security disability determinations and can be further read as constituting a finding, based on Dr. Verma's report, that plaintiff was capable of performing the full range of light work, then the finding of not disabled would appear to be affirmed. If, on the other hand, there is no substantial evidence to support the ALJ's determination that plaintiff's obesity was not cognizable or if there is not substantial evidence to support the determination that the obesity had no effect on plaintiff's RFC, such error could very well warrant reversal of the administrative determination of not disabled. If Dr. Verma's findings of plaintiff's need for significant periodic rest breaks constituted an erosion of his ability to perform work at the light exertional level, then the ALJ determination that the medical-vocational guidelines warranted a non-disabled finding would constitute error.

In addressing the issue of plaintiff's obesity, the ALJ does not elaborate on his statement that "body habitus is not a material or decisive factor to a disability finding." If such statement means obesity is irrelevant to a determination of disability, neither the ALJ, nor the defendant in their brief to this Court, have cited any authority for such contention, and Social Security ruling 02-1P contradicts such contention. SSR 02-01P holds that an individual's obesity will be considered in determining whether such person is capable of performing their past relevant work or other work which exists in the national economy. The ruling holds that even if the evidence in the case does not include a diagnosis of obesity, but includes clinical notes or other records showing consistently

high body weight, or BMI, then the administration may ask a medical source to clarify whether the individual has obesity. The ruling states that obesity is considered a "severe" impairment if it, alone or in combination with other medically determinable impairments, significantly limits an individual's physical or mental abilities to do basic work activities. The ruling notes that the administration will consider the effects of any symptoms, such as pain or fatigue, that could limit functioning. An impairment is "not severe" only if it is a slight abnormality that has no more than a minimal effect on an individual's ability to do basic work activities. The ruling provides that functions which may be limited by obesity are any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling, and that obesity may affect postural functions. The ruling holds that an assessment should be made as to the effect obesity has upon an individual's capacity for routine movement and necessary physical activity within the work environment and that RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.

    Here, the ALJ made two findings relevant to the question of plaintiff's obesity. First, the ALJ found plaintiff's obesity not to be a "severe" impairment notwithstanding Dr. Verma's specific finding that plaintiff has no disabling impairments <u>other than obesity</u>. The ALJ then, however, appears to find that obesity is not a consideration, stating "body habitus" is not a material or decisive factor to a disability finding under the Social Security Act. If the ALJ considered the issue of obesity totally irrelevant and not cognizable to a disability determination, then such constitutes error in light of SSR 02-1P. If the ALJ determination that obesity does not constitute a "severe" impairment is to stand, then the ALJ has failed to state the substantial evidence supporting such determination and has failed to explain why he disregarded the treating physician's finding that

plaintiff's only disabling impairment is obesity. While the ALJ does not have to accept a determination by Dr. Verma that plaintiff's obesity is disabling, at a minimum, the ALJ was required to point to other evidence in the record which supported his finding that plaintiff's obesity is not severe and to explain or state why he found the treating physician's statement not credible.

While the SSA's lack of compliance with its own rules may not constitute reversible error absent a showing of prejudice to the claimant, *Cf. Newton v. Apfel*, 229 F.3d 448, 459-60 (5th Cir. 2000); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988), in this case the elimination of an impairment which should have received consideration is prejudicial, particularly in light of Dr. Verma's findings that plaintiff would need to lie down frequently on a daily basis. While one possible interpretation of Dr. Verma's report might be that the doctor did not intend to impose the rest and leg elevation restrictions he imposed, it is also entirely possible that these restrictions were compelled by plaintiff's obesity.

B.
Clarification of Inconsistent Assessment

SSR 96-5p, which clarifies SSA policy on how medical source opinions on issues reserved to the Commissioner are considered, provides under the subsection "Requirements for Recontacting Treating Sources," that (1) if treating source evidence does not support a treating source's opinion, (2) on any issue reserved to the Commissioner, and (3) the ALJ cannot determine the basis of the opinion from the case record, (4) then the ALJ must make "every reasonable effort" to recontact the treating source for clarification of the reasons for the opinion. The regulations state that the Administration will seek additional evidence or clarification from the claimant's medical source when a report from that medical source contains a conflict or ambiguity that must be resolved. 20

CFR § 404.1512(e)(1). The regulations further require that the ALJ set forth in his decision specific reasons for rejecting a treating source's opinion. 20 CFR § 404.1527(d)(2).

In his second ground, plaintiff contends the assessment from Dr. Verma contained a conflict, to wit: plaintiff could lift 20 pounds, stand and walk five hours a day, but had to lie down five times a day, elevate his legs and rest frequently, could not work at his last occupation as a truck driver but could work at some other occupation. The ALJ noted this inconsistency, but concluded, "It seems clear that [Dr. Verma] did not intend to suggest that the claimant's need for rest periods and leg elevation would preclude his completion of a normal eight-hour work day." (Tr. 14). The ALJ based this conclusion on the contents of the progress report Dr. Verma made that same day, as well as the findings and conclusions made by the doctor in the same assessment form. Plaintiff argues the ALJ committed reversible error by summarily dismissing, as unsupported, Dr. Verma's opinion concerning plaintiff's need to frequently rest without recontacting the treating physician for additional evidence or clarification pursuant to SSR 96-2p. Plaintiff contends the ALJ was required to resolve the conflict in Dr. Verma's opinion and had an affirmative duty to develop the record by obtaining additional evidence or clarification from Dr. Verma. Plaintiff maintains clarification of Dr. Verma's opinion may have shown that plaintiff's ability to maintain employment was compromised by fatigue or other symptoms caused by his poorly-controlled diabetes mellitus, hepatitis C, and obesity.

Defendant argues an ALJ need only elicit additional information or clarification "if the ALJ determines the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight . . . ." *Newton v, Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). SSR 96-5p states a treating source need only be recontacted if the evidence does not support the treating source's

opinion on an issue reserved to the Commissioner <u>and</u> the ALJ cannot determine the basis of the opinion. Here, the ALJ considered Dr. Verma's September 25, 2001 assessment, but rejected that portion of the assessment which stated plaintiff needed to lie down and elevate his legs multiple times a day. While the ALJ has the sole responsibility for determining whether the diagnosis of a treating physician should be afforded considerable weight, *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995), and while the ALJ is free to reject the opinion of any physician when the evidence suggests a contrary conclusion, the ALJ cannot accept only those portions of the treating physicians' findings supporting a finding of not disabled and ignore findings which support disability.

It seems clear that the Social Security Administration, pursuant to SSR 96-2p, has anticipated that on occasion a treating physician's findings may be contradictory and/or ambiguous and that the need to contact or recontact such physicians will occur. Consequently, a procedure for such a process has been authorized. In this case, neither the ALJ in the administrative record, nor defendant in their brief, has advanced any reason why recontacting Dr. Verma would have been onerous. In fact, it would appear any inquiry of Dr. Verma would have been relatively straightforward and brief, *i.e.*, were his findings on page 2 in error and if not, was it his opinion that plaintiff could not function during an eight hour work day without the rest periods and leg elevation times stated.

As the record shows, the ALJ did not recontact Dr. Verma and instead, found it clear that Dr. Verma did not intend to suggest that plaintiff's need for rest periods and leg elevation would preclude his completion of a normal eight hour work day. The initial difficulty here is that the ALJ never found that plaintiff did not need such rest periods and leg elevation, or that Dr. Verma's

determinations were mistaken. Instead, the ALJ found that plaintiff's need for such rest periods and for such leg elevation, as outlined by Dr. Verma, would not preclude his completion of a normal eight hour workday. The only way Dr. Verma's restrictions would not preclude completion of an eight hour work day would be if all of plaintiff's rest periods and leg elevation periods occurred when he was at home after completion of a work day, and that does not appear to be a reasonable conclusion. Consequently, the ALJ's statements notwithstanding, the undersigned can only assume that the ALJ actually determined that plaintiff did not have a need for the rest periods or leg elevation periods described by Dr. Verma and that Dr. Verma misspoke. The issue is further complicated by plaintiff's obesity. As stated above, Dr. Verma found plaintiff had no disabling condition other than his obesity, and also found plaintiff had the need for a number of rest periods during each day. While he did not specifically state so, it is reasonable that such a need for rest periods and leg elevation would be caused by fatigue as well as by pain. Plaintiff's obesity could certainly have a direct impact on fatigue.

Therefore, while the ALJ's conclusion that Dr. Verma's contradictory findings at page 2 are erroneous or do not preclude the plaintiff from engaging in substantial gainful activity, such conclusion is not the only conclusion which can be drawn. It was error for the ALJ not to contact Dr. Verma and seek clarification of Dr. Verma's contradictory findings. The error was not harmless, particularly in light of the plaintiff's testimony at the ALJ hearing. Plaintiff testified as to his need to lie down five times each day and to elevate his feet. (Tr. 190-A). Upon remand, Dr. Verma's report should be clarified.

# V.
# RECOMMENDATION

For the reasons recited above, it is the recommendation of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of disability benefits be REVERSED and the case REMANDED for further administrative proceedings consistent with this Report and Recommendation.

# VI.
# INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 7th day of March 2008.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report

and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).